JAMES BUXTON,
seised of lands,part in fee simple,and other part, by the testament of Richard Bennett, in fee taille, in the year 1751, devised the former, called his old plantation, to his eldest son John, to whom he also bequeathed several negro slaves and chatels, and devised the latter, consisting of two tenements, one called Bacons, to bis son Thomas, and the other called Jordans, to bis son William, and to their respective heirs, the devise to John was without words of inheritence. in a subsequent clause is a devise to the testators son Josiah, and to his heirs, of the plantation given to any of his sons who should die without issue; whereby the estate devised to every son, except Josiah, was an entail.
The defendent, only child of John, recovered the lands entailed by Bennetts testament from the plaintiffs, who had sué-ceded to the rights of Thomas and William.
The plaintiffs, by their bill, prayed that the defendent might be decreed to convey and deliver to théirrthe lands and slaves, and pay to them the value of the other estate, which had been, devised and bequeathed by his grandfather to his father, and had come into possession of the defendent himself, if he elected to retain the lands recovered, and that the judgment might be enjoined until further order, which injunction was awarded.
The defendent, by his answer, insisted that the devise to his father, if the words were proper to convey a fee simple, was void, because being heir he took by descent; hut, whether he took by descent, or whether a fee taille were devised, he clamed *184 the lands devised by both testators; electing however, if he must be confined to one, to hold those devised by Bennett: and stated that of the slaves bequeathed to the defendents father, and their increase, some were dead, one had been sold by the defendent, and the remainder, who had eloped to the british enemy, never returned.
The case was argued the 2 day of march 1793, when the court delivered this
OPINION,
That the defendent, who, claming by the testament of Richard Bennett, hath recovered the entailed lands devised by James Buxton to his sons Thomas and William, ought not to retain any estate or interest derived from the said James Buxton by (a) testament, but ought to yield the same to the plaintiffs ; because the presumption, that this testator, if he had known that right to exist, the assertion of which after his death deranged the partition of the estate made by him, would have provided some other way for those younger sons, at least would have bestowed upon them what he devised and bequeathed to his eldest son, or would have directed their loss to be compensated out of his legatary portion, is no less cogent of our belief, than a paragraph, to one or other of those purposes, inserted in his testament, would have been ; and this presumption will authorise the supplement of such a provisory substitution of Thomas and William for John, in the testament, the supplement (b) is con. *185 ceived to be sanctified by the necessity of some expedient to effectuate, as much as is now possible, and with least inconvenience, the intention of a testator to give some of his lands to two of his children ; an intention, otherwise, wholely frustrated through error in him. and this expedient is recommended by its concordance with the principles of equity, which forbid him, *186 who gaineth by abolishing one part of a testament, to gain also by another part of the same testament suffered to retain its vigor, and require the sharer in a general allotment, who occupieth the portion destined for a fellow sharer, to cede to him the portion destined for lrimself. (c)
And the court pronounced the following
DECREE.
That the defendent, do convey, with warranty against any claming under him, to the plaintiffs Miles Cary and Grizzel his wife, and to the heirs of the wife, one moiety,and to the plaintiff Josiah Buxton, and to his heirs, the other moiety, of the old plantation, which the testator devised to the defenders ts father, at the costs of the plaintiffs, and resign the possession *187 thereof to them ; that the injunction, awarded for preventing emanation of the habere facias possessionem, in execution of the judgement against the plaintiffs recovered by the defendent be dissolved ; but that the defendent be not intitled to the benefit of this dissolution, until he shall by affidavits have proved to the clerk of the general court that he the defendent. had executed the conveyances, and resigned the possession, of the old plantation before mentioned to the plaintiffs, or that he had offered to do so, and that the plaintiffs had failed to procure the one, and refused to accept themther ; that accounts of the rents and profits of the plantation to be conveyed to the plaintiffs and also of the lands recovered from them by the defendent, since the last day of december, 1770, and accounts of the slaves, and personal estate of James Buxton, which came into possession of the defendent, and of the profits of the said slaves, and value received by the defendent for any of them which he hath sold or otherwise disposed of, being made up before commissioners afternamed, the plaintiffs to be made debitors for the rents and profits of the lands recovered from them, and creditors for the other articles, with the costs expended by them in prosecution of this suit, the party from whom the balance shall appear to be due do pay the same to the adverse party ; and that the defendent do deliver such of the said slaves as remain, if any remain, subject to his power, to the plaintiffs, and Solomon Sheppard and others were appointed commissioners.

 In this part of the opinion prefixed to the decree, as it is entered on the record, are the words, hereditary succession or, which were inserted inadvertently.

 Examples of supplements to render effectual the presumed wills of testators.
1. Curius substitutus heres erat, si posthumus ante tutelae suae annos deccs-sisset. non eat natus. propinqui bona sibi vendicabant. quis dubitaret, quin ea voluntas fuisset testantis, ut is non nato filio heres esset, qni mortuo? sed hoc non scripserat. Quinctil. de institut. orator, lib. VII. c. VI, Cicero, orat. pro A. Caecina, c. 8. see eq. ca. abr. part 1 p. 245. c. 10. and eq. ca. abr, part 2 p. 294. c. 24. that the testator, who willed, if a posthumous son should die before a certain age, Caius to be his heir, must have willed the same Caius to be heir if no posthumous son existed, was so presumable that none could doubt it. the judges in that case therefore allowed his clame; but this could not be done without supplying words adapted to the event, so that the testament would be understood as if. the terms had been these: Curius heres esto, si posthumus mihi natus non fuerit, aut si ante tutelae suae annos decesserit
2. Si ita scriptum sit, si fiiius mihi natus fuerit, ex besse heres esto, ex re-liqua parte uxor mea heres esto; si vero filia mihi nata fuerit, ex tríente heres esto, ex reliqua parte uxor heres esto: et fiiius et filia nati essent, dicendum est *185 (according to the opinion of Julianus) assem distribuendum esse in septem partes, lit ex his filius quatuor, uxor duas, filia uñara partem ha beat: ita enim secundum voluntatem testantis, filius altero tanto amplius habebit quam uxor, item uxor altero tanto amplius quam filia, licet enim subtili juris regulae conveniebat, ruptum fieri testamentum, attamen, quiun ex utroque nato testator voluerit uxorem aliquid ha-bere, ideo ad hujusniodi sententiam, hnmanitate suggerente, decursura: est quod etiam Juren tío Celso apertissime placuit. Dig. lib. XXVIII. tit. II 1. 13. words must also be supplied here ; the testament not having provided for the case of twins, undoubtedly because the event was not contemplated.
This opinion of Julianus seems not approved by Home, in his principles of equity, book 1 part 1, sect. 3. art. ?. yet, in the next paragraph, he approves a de-gision, perhaps not les3 exceptionable, of a case thus reported by him :
In a contract of marriage there was the following clause : and in ease there shall happen to be only one daughter, he obliges him to pay the sum of 18000 merks ; if there be two daughters, the sum of 20,000 merks, whereof 11000 merks to the elder, and 9000 to the younger; and if there be three daughters, the sum of 30000 merks,, 12000 to the eldest, 10000 to the second, and 8000 to the joungest, afourth daughter having existed of the marriage, the question occurred, whether she could have any share of the 30000 merks, upon the presumed will of the father, or be left to insist for her legal provision ab intestato. the eourt decreed 4500 merks as her proportion of the 30C0Ü merks ; so as to restrict the eldest daughter to 10500 merks, the second to 8500, and the third to 6500. though the existence of a fourth daughter was a casus incogitatus, for which no provision was made, yet as it appeared to be the fathers intention to provide for all the children of that marriage, there was a right created in the fourth daughter by this intention, which intitied her to a share of the 30000 merks.
3. Clemens Patronus testamento caverat, ut sisibi filius natus fáisset, heres esset: si duo filii, ex equis partibus baerédeS essent: si duae filiae, similiter: si filius et filia, filio duas partes, filiae tertiam dederat. duobus Bilis et filia natía, quaereba-tur quemadmodum in proposita specie partes faeiemus : cttm filii debearit pares esse, vel etiam singuti duplo plus quam soror accipere, quinqué igitur partes fieri opor-tet, ut et ex his binas masculi, unam foemina accipiat. Dig. lib. XXVIII. tit. V. 1. 81.
4. Gilberts reports of cases in equity, p. 15 nearly resembling the principal case. Bur. rep. part 5 p. 2703 1 Id. Raym. rep. 187.
Examples of total rescissions of testaments, presumed to be contrary to the wills of the testators, because they were impressed with the belief of falsehood.
1. De militis morte, cum domum falsus ab exercitu nuntius venisset, et pater ejus, re credits, testamentum mutasset, et quem ei visum esset, fecisset heredera, essetque ipse mortuus : res delata est ad centumviros, cum miles domum revenisset, eglssetque lege in hereditatem paternam. nempe in ea causa quaesitum est de jure ciwill, po3setne, paternorum bonorum exheres esse filius. quem pater testamento ñe-que heredem, ñeque exheredem, scripsisset nominatim? Cicero de oratore, lib 1 . c. 38. how the question was then decided this author doth not say. Valerius Maxi- *186 mus, lib. í. c. 1, reports that adolescens, omnibus, non solum consiliis sed etiam, sententiis superior decessit. to show how it would be now decided, any modera adjudication, inducing a probable conjecture, is not recollected,
2. Paetumeius Androsthenes Pactumeiam Magnam filiam Pactumeii Maguía ex asse heredem iostituerat: eique patrem ejus sobstituerat, Pacturoeio Magno occiso et rumofe perlato, quasi filia ejus quoque mortua, mutavit tcstamentum, Noviumque Rufmn haeredem instituit, hae praefatione ; quia hsredes, quos volui habere mihi, eúntmere non potui, Norms Rufus heres esto : Pactumeia Magna supplicavit imper-atores nostros, et cognitions suseepta, licet modus institutione contiüeretur, quia falsus non solet obesse, tamen ex volúntate téstantis putavit imperator ei subvenien-dum : igit'ur proimnciavit,bereditatem ad M-gnam pertinere: sed legata ex posteriors testamento earn praestare debere, proinde atque si in posterioribus tdbulis ipsa faisset heres scripta. Dig. lib. XXVIII. tit. V. 1. 92. the former part of this sentence is thought indubitably right.
Example of a testament becoming null by a presumed change of will from an event not expected when the testament was made.
Nuro qtiis eo testamento, quod paterfamilias ante fecit quam ei filius natus est, hereditatem petit? nemo: quia constat, agnascendo rutnpi testamenten) : ergo in hoc genere juris judieia mulla sunt. Oíc. de oratore, lib. 1. c. 57. this author' supposed no man would question whether the rupture of a testament were wrought by the posterior birth of a son. this was perhaps because by the roman civil law, qui (ilium in potestate habet, curare debet ut eum heredem instituat (quamvisex minima parte) vel exheredem eum nominatim faciat :*alioquin si eum silentio pr&e-terierit, inutiliter testabitur. Just, instituí, lib II. tit. XIII. testametum dici-tur nulling esse momenti, cum filius, qui fuit in patris potestate, praeteritus est. Dig. lib. XXVIII. tit. III. 1. 1. see Home’s pr. eq. book 1, part 1. sec. 3. art. 3. Bur. rep. part 5. p. 2703. acts of gen. assembly, oct. 1185. c. 63, sect. 3.

 To prevent that which a testator Willed not to be, is as pious an act as to perfect that which a testator willed to be.
That the testator, in this case, willed his son John not to have all the three tenements, old plantation, Bacous, and Jordans we know with certainty.
To prevent this, since the heir of John hath, by an extraneous right, vindicated to himself two of the tenements, is impossible, if the devise of old plan *187 tation to John remain as it' is. to declare it intirely void would be nugatory, cause he would then take the land by hereditary succession, the only method, therefore, by which the effect desired can be accomplished, is a translation of the benefit intended by that devise fot Johii, if he would have acquiesced in other parts of the testament, to his brothers, Thomas and William, who were deprived by him of the benefits intended for them, thus the benevolence of the testator, interrupted in the course directed by him, will be diverted into the course which he would have directed if he had foreknown the cause of the interruption, although perhaps less copiously than he wished.